United States District Court       Southern District of Texas

United States District Court
Southern District of Texas
**ENTERED**
July 20, 2022
Nathan Ochsner, Clerk

Saowalak Pimpanit,

    Plaintiff,

*versus*

Phumswarng, Inc., *et al.*,

    Defendants.

Civil Action H-20-289

# Opinion and Order on Partial Summary Judgment

1. *Background.*

In March 2017, Phumswarng, Inc., hired Saowalak Pimpanit as a server at Thai Gourmet.

Each day the cashier created a report for management that included that day's cash, credit, and tip receipts. These reports were used to ensure cash was reconciled and server tips calculated. Each pay period, the servers get a tip report tallying the total tips that they were due. Concerned about the accuracy of the tip reports and late paychecks, the servers – as a group – went to management.

In response, Phumswarng invited written questions from the servers. On February 19, 2018, the restaurant's manager – Saengdaow Dubroc – and owner – Sawonya Tabers – met with the servers to discuss the questions. The servers then had the opportunity to submit anonymous questions after the meeting.

For about two weeks, Pimpanit began collecting the daily printouts and bringing them home with her without permission. On March 16, 2018, a cashier told management that Pimpanit had been taking the printouts home. When Pimpanit arrived at work, Phumswarng asked her about taking the printouts. She remained silent. Phumswarng fired her that day.

On January 24, 2020, Pimpanit sued Phumswarng, Tabers, and Dubroc for retaliation under the Fair Labor Standards Act. The parties have cross-moved for summary judgment.

2. *Retaliation.*

The Fair Labor Standards Act protects workers from being fired for "filing a complaint" about violations under the Act.[1] To establish a *prima facie* case of retaliation under the Act, Pimpanit must show that: (a) she participated in a protected activity; (b) she suffered an adverse employment action; and (c) the protected activity and adverse action were causally linked.[2] If Pimpanit meets her burden, then Phumswarng must rebut with a legitimate, non-retaliatory reason for firing her.[3] If a legitimate, non-retaliatory reason is given, the burden shifts back to Pimpanit to show that the reason is pretextual.[4]

A. *Prima Facie.*

A protected activity need not be a formal nor external complaint and may be verbal rather than written.[5] The complaint must be sufficiently clear and detailed to give fair and reasonable notice that she is asserting her rights under the Act.[6] "Abstract grumblings" and "vague expressions of discontent" are insufficient to constitute a complaint.[7] The complaint need not directly refer to the Act, but it must concern potential illegality and be adverse to the employer.[8]

---

[1] 29 U.S.C. § 215.

[2] *Stuntz v. Lion Elastomers, LLC*, 826 Fed. Appx. 391, 402-03 (5th Cir. 2020).

[3] *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008).

[4] *Id.*

[5] *Kasten v. Saint Gobain Perf. Plastics Corp.*, 563 U.S. 1, 13 (2011).

[6] *Id.*

[7] *Lasaster v. Texas A&M Univ. Com.*, 495 Fed. Appx. 458, 459-60 (5th Cir. 2012).

[8] *Id.* at 461.

At this stage, causation may be shown with a close enough temporal proximity.[9] Less than 60 days is considered adequately close to establish a *prima facie* causal link.[10]

It is undisputed that Pimpanit suffered an adverse employment action when Phumswarng fired her. The less-than-one-month difference between the meeting and her firing is adequate for causation under the *prima facie* prong. The true dispute between the parties is whether Pimpanit sufficiently "complained" to qualify as a protected activity.

Pimpanit says that, though informal, her and her co-workers' lists of questions about the calculation and deduction of tips and later meeting are sufficient to be a complaint under the Act. She argues that they discussed the deductions being too high, and that Phumswarng acknowledged their concerns. She insists that, during the meeting, someone mentioned the conduct being illegal.

Phumswarng says that the Act nor its obligations were mentioned in the questions or meeting. It also highlights that Pimpanit never had an individual meeting with management – only as part of a group. Phumswarng insists that it had no advanced knowledge of the tip reports being used. It also argues that treating this as a complaint would open a pandora's box where any discussion of pay policy would be actionable. Phumswarng says that – at most – it was a discussion of the amount deducted, not the legality of the deductions themselves. It also insists that "illegal" was not mentioned until another server anonymously submitted a question after the meeting.

Pimpanit also says that her collecting of the tip printouts was a protected activity. She insists that the defendants withheld all necessary information to corroborate the tip amounts, and that she had no other choice but to collect the documents and take them home with her. Pimpanit argues that this was a

---

[9] *Woodson v. Scott and White Memorial Hosp.*, 255 Fed. Appx. 17, 20 (5th Cir. 2007); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).

[10] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005).

"continuation of their protected activity as it was undertaken in order to obtain evidence that Thai Gourmet would not provide to them."

Phumswarng claims that it was unaware that she had the reports until the day that it fired her and did not know her intent in having them until well after – because Pimpanit admitted to not looking at them until after being fired. Phumswarng argues that it would be forced to have too much insight if this is considered a protected activity. It also claims that the information was readily accessible, and no "need" existed to take the documents.

The court finds that her collecting of the records is not a protected activity under the Act.[11] Pimpanit gives no legal support for her "continuation" argument, and the inference required to impute adequate knowledge to Phumswarng is too great. No convincing argument was made to frame the collecting of records as a "complaint."

A genuine dispute of material fact exists, however, as to whether the meeting and questions were adequately detailed to give Phumswarng fair notice that Pimpanit was raising concerns of illegal conduct, especially considering the group nature of the meeting and questions. The credibility of the parties and reasonableness of their understandings are key and best left to the jury.

B. *Legitimate, Non-Retaliatory Reason.*

To adequately offer a legitimate, non-retaliatory reason, Phumswarng must offer evidence that, if believed, would support finding that the cause of her firing was not unlawful retaliation.[12]

Phumswarng asserts that it had a legitimate, non-retaliatory reason to fire Pimpanit once it discovered that she had taken the printouts. It claims that she took her "employer's sales information without permission" violating restaurant policy. Phumswarng says that these printouts included important business information including tips collected, money made, items sold, customers served, take-out volume, types of food used, and sales by server.

---

[11] *See Hodgson v. Texaco, Inc.*, 440 F.2d 662, 663 (5th Cir. 1971).

[12] *Stuntz*, 826 Fed. Appx. at 404.

Pimpanit counters by claiming that Phumswarng never articulated how this information is confidential, proprietary, or a trade secret.

This court agrees with Phumswarng. The information on the printouts is important business information. It can tell a lot about how the business functions, ways to improve efficiency, future ordering and staffing needs, and others. This is the sort of information that Phumswarng is entitled to protect. Trust was broken, and employers have to be able to trust their employees. An employee's appropriation of records without permission is a valid reason to fire them, especially considering her training expressly covered it.

Phumswarng has offered a legitimate, non-retaliatory reason for firing Pimpanit.

C. *Pretext.*

To show pretext, Pimpanit must rebut each of Phumswarng's reasons as pretextual – or based on animus over her complaint.[13] Pretext exists if the reason is "unworthy of credence" or not the real reason for her firing.[14]

At this stage, she must show that her complaint was a but-for cause of her firing.[15] A close temporal proximity alone is insufficient.[16]

Pimpanit says that Phumswarng's reason for firing her was pretext because:

    (1)    nearly one month passed between the meeting and her firing;

    (2)    the printouts she took are regularly thrown in the trash, so they were worthless;

    (3)    Phumswarng attempted to "coerce" other workers into giving false statements in its favor;

---

[13] *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 858, 867 (5th Cir. 2016).

[14] *See Reaves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[15] *Kanida v. Gulf Coast Medical Personnel, LP*, 363 F.3d 568, 580 (5th Cir. 2004); *see also Clark v. Chamption Nat'l Sec., Inc.*, 952 F.3d 570, 588 (5th Cir. 2020).

[16] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 807-08 (5th Cir. 2007).

(4) Phumswarng did not discipline the cashiers who gave her the printouts; and

(5) other employees who violated restaurant policy but were not fired, just warned: (a) clocking out for a co-worker, (b) taking a customer's sunglasses home, and (c) giving a customer an extra $100 in change.

Phumswarng says that its reason was not pretext because:

(1) Pimpanit was trained, so she was put on notice of restaurant policy, including that, if it does not belong to you, ask for permission before taking;

(2) the printouts were not regularly thrown away but maintained in the records for seven years;

(3) restaurant policy explicitly prohibited taking restaurant property and disclosing confidential information; and

(4) Pimpanit knew it was wrong to take the records as she kept it a secret and refused to respond when confronted about it.

Pimpanit also offers declarations from her co-workers to show that – in support of pretext – her co-workers considered her their "leader" and key investigator, so Phumswarng targeted her. She does not, however, give any evidence that Phumswarng knew that she was the leader. Because speculation and subjective beliefs are inadequate to raise a genuine issue of fact, the court will not consider this argument.[17]

A genuine dispute of fact exists as to whether Phumswarng's reason was pretext. Credibility of the parties and witnesses are again vital to resolving this issue and that is best left to the jury.

---

[17] *Douglass v. U.S. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (superceded on other grounds).

3. *Conclusion.*
   (a) Pimpanit's taking of the tip printouts is not a protected activity.
   (b) Pimpanit suffered an adverse employment action when she was fired and has shown causation under the *prima facie* prong.
   (c) Phumswarng's reason for firing Pimpanit is a legitimate, non-retaliatory reason.
   (d) Genuine disputes of material fact remain as to whether Pimpanit "complained" under the Act and whether Phumswarng's reason for firing her was pretext. These will be determined by the jury at trial. (57)(58)
   (e) As the exhibits ultimately did not impact the courts ruling on the summary judgment motions, Phumswarng's objections to Pimpanit's summary judgment exhibits 4-6 are overruled.

Signed on July **20**, 2022, at Houston, Texas.

                                                    Lynn N. Hughes
                                          United States District Judge